UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT EHMCKE,                               Case No. 14-14301

             Plaintiff,                      Hon. Bernard A. Friedman
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 14, 15)**

I.     **PROCEDURAL HISTORY**

       A.     Proceedings in this Court

       On November 6, 2014, plaintiff filed the instant suit seeking judicial review

of the Commissioner's decision disallowing benefits.[1]  (Dkt. 1).  Pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Bernard A.

Friedman referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claims.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkts. 14, 15).

Plaintiff also filed a reply brief.  (Dkt. 16).  The cross-motions are now ready for

_____

       [1] Plaintiff's original complaint was stricken from the record because the PDF image had
not loaded completely.  Plaintiff filed a corrected copy of the complaint on November 11, 2014.
(Dkt. 4).

report and recommendation.

    B.    <u>Administrative Proceedings</u>

On February 2, 2012, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging a disability beginning January 1, 2010.  (Tr. 125-131).  The Commissioner initially denied plaintiff's disability application on July 31, 2012.  (Tr. 68-77).  Thereafter, plaintiff requested an administrative hearing, and on May 14, 2013, he appeared with counsel before Administrative Law Judge ("ALJ") James J. Kent, who considered his case de novo.  (Tr. 35-67).  In a June 12, 2013 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 21-30).  The ALJ's decision became the final decision of the Commissioner on September 23, 2014, when the Social Security Administration's Appeals Council denied plaintiff's request for review.  (Tr. 1-6).  Plaintiff filed this suit on November 6, 2014.  (Dkt. 1).

For the reasons set forth below, the Court concludes that the ALJ failed to provide the requisite "good reasons" when it discounted the opinion of plaintiff's long-time, treating physician.  The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 14) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 15) be **DENIED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social

Security be **REVERSED AND REMANDED,** so that the ALJ can accord proper

weight to the opinion of the treating physician and give the required "good

reasons" in the notice of determination for the weight given.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

 Plaintiff previously worked as a warehouse manager and as a truck driver.

(Tr. 60).  The highest level of education that plaintiff completed was the tenth

grade.  (Tr. 40).  The ALJ applied the five-step disability analysis to plaintiff's

claims and found at step one that plaintiff did not engage in any substantial gainful

activity since January 1, 2010, the alleged onset date.  (Tr. 23).  At step two, the

ALJ found that plaintiff had the following severe impairments: osteoarthritis of the

bilateral wrists secondary to Kienbock's Disease (a.k.a. vascular necrosis of the

lunate) status post bilateral carpal tunnel releases (20 C.F.R. § 404.1520(c)).  (Tr.

24).  At step three, the ALJ found that plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (Tr. 25).

The ALJ determined that plaintiff had the residual functional capacity

("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b). He can
> frequently handle and feel bilaterally. The claimant can
> occasionally finger bilaterally. He can occasionally reach

> overhead bilaterally. The claimant can lift 20 pounds
> occasionally and 10 pounds frequently. He can sit for up
> to 6 hours during an 8-hour workday with normal breaks.
> The claimant can stand/walk up to 6 hours during an
> 8-hour work period with normal breaks. He can
> occasionally balance, kneel, stoop, crouch, and crawl.
> The claimant must avoid extreme temperatures,
> humidity, and vibration. He can make normal work
> judgments. The claimant can perform normal work tasks.
> He can interact appropriately with coworkers and
> supervisors. The claimant can occasionally interact with
> the public. He can respond to usual work situations. The
> claimant can tolerate routine changes in his work setting.

(Tr. 26). At step four, the ALJ determined that plaintiff was unable to perform any

past relevant work. (Tr. 29). At step five, the ALJ concluded that based on

plaintiff's age, education, work experience and RFC, there are jobs that exist in

significant numbers in the national economy that plaintiff can perform and,

therefore, he has not been under a disability from January 1, 2010 (the alleged

onset date), through the date of the decision. (Tr. 29-30).

B.   Plaintiff's Claims of Error

1.   The ALJ failed to give the required "good reasons" when he
rejected the opinion of his treating physician, Dr. Kerr.

Plaintiff claims that the ALJ, without justification, rejected the opinion of

his long-time treating physician, Dr. Charles Kerr, who determined that he was

limited to less than a full range of "sedentary" work, i.e., lifting no more than 10

pounds. (Tr. 340-43). While the Commissioner is able to make the ultimate

4

decision regarding whether plaintiff is disabled, the discretion as to the weight an ALJ affords medical opinion evidence is not unbridled.  With respect to treating sources, plaintiff avers that if controlling weight is not given, and ALJ is required to consider six factors: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) speciality; and (6) other factors.  *See* 20 CFR 1527(d)(2).

Further, this Circuit holds that a medical opinion by a treating source is entitled to more weight than an opinion from a non-treating source, or from a consulting physician who has only examined the plaintiff one time.  20 CFR 404.1527(d)(1)-(2); *see also Rogers v. Comm'r*, 486 F. 3d 234, 242 (6th Cir. 2007).  Plaintiff claims that the reasons that the ALJ gave for discounting Dr. Kerr's opinion are not valid.  First, the ALJ claimed that the record revealed that though Dr. Kerr had a long-term treating relationship with plaintiff, the actual treatment with Dr. Kerr was "relatively infrequent."  In his medical source statement, however, Dr. Kerr stated that he had treated plaintiff two to three times annually over 30 years, which equates to between 60 and 90 contacts.  While a majority of these contacts pre-date the alleged onset date, plaintiff contends that many of his conditions are chronic, including Keinbock's disease, hypertension, hyperlipidemia, depression, post-herpetic neurologia, and chronic lumbar myofascial pain.  Second, the ALJ stated that plaintiff's course of treatment was

5

not consistent with someone who was "truly disabled" as there were no X-rays or MRI scans of the plaintiff's back, shoulders or elbows in the record. Plaintiff claims, however, that Dr. Kerr had made appropriate referrals to specialists, including for his hand/wrist problems. Additionally, as acknowledged by the ALJ, plaintiff underwent a nerve conduction study in April 2009 evidencing his carpal tunnel syndrome. Plaintiff further underwent bilateral carpal tunnel release surgical procedures and received therapy thereafter. So, to say that there was no evidence that plaintiff's conditions resolved with conservative care, or that there was no evidence that plaintiff was a surgical candidate is simply not accurate. Finally, the ALJ discounted Dr. Kerr's opinion because he concluded that plaintiff's degree of limitation was inconsistent with consulting physician Dr. Lazarra's June 2012 physical examination. To this argument, plaintiff points to the Dr. Kerr's findings which indicate plaintiff's limitations in reaching, handling or fingering, as well as significant limitations in the use of his fingers in fine manipulation. (Tr. 343). In sum, plaintiff argues that the ALJ failed to support his decision to discount the opinion of plaintiff's long-time treating physician, Dr. Kerr, over consulting examiner, Dr. Lazarra. Failure to give the necessary good reasons, makes it impossible for a subsequent reviewer to trace the ALJ's line of reasoning and violates 20 C.F.R. § 1527(d)(2).

Plaintiff contends that the medical evidence is consistent with the opinion of

6

Dr. Kerr.  Keinbock's disease, as one example, is a progressive arthritic condition

resulting in abnormality in the wrists and hands.  Dr. Kerr's opinion is supported

by the record and is work preclusive as plaintiff is unable to sustain activities

without significant breaks or absences due to a combination of factors.  (Tr. 63,

64).

> 2.     The RFC did not accurately reflect plaintiff's impairments

Plaintiff also argues that the RFC does not reflect the level of impairment

found to exist by plaintiff's treating physician, Dr. Kerr.  An RFC is defective if it

does not comport with substantial evidence in the record.  Plaintiff claims that the

RFC here is defective because it does not comport with substantial evidence in the

record, namely Dr. Kerr's opinion.  *Hamilton v. Sec'y of HHS*, 961 F.2d, 1495

(10th Cir. 1992), *Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983).  Plaintiff

avers that there is nothing in the record to support the ALJ's determinations

regarding the limitations concerning plaintiff's abilities to handle, feel or finger.

Moreover, and importantly, the limitations are inconsistent with Dr. Kerr's

opinion.  As such, plaintiff contends that the RFC is defective.

> 3.     The ALJ improperly assessed plaintiff's credibility

Plaintiff claims that the ALJ failed to properly consider the factors in 20

C.F.R. § 404.1529(c) when assessing plaintiff's credibility.  Specifically, plaintiff

avers that there is no discussion of the factors set forth in the statute; rather the

7

ALJ just made a conclusory finding that plaintiff was only partially credible. On

examination, plaintiff testified that he had limitations with his hands and wrists

when he picked items up, and that he experienced pain if he turned or twisted his

hands or wrists. (Tr. 42). Plaintiff also testified that he could lift ten pounds, but

could not do it repetitively. (Tr. 43). He also indicated that reaching with either

hand would cause pain. Plaintiff argues that there is scant evidence in the record

that the ALJ considered the relevant factors when assessing plaintiff's credibility,

as such the analysis is flawed.

> 4.   The Appeals Council failed to consider new and material
>       evidence submitted following the hearing

Plaintiff also seeks a sentence six remand because he claims that new and

material evidence of his disability was submitted following the evidentiary

hearing. A sentence six remand under § 405 provides that the Court may allow

additional evidence to be submitted before the Secretary upon the showing that

there is new evidence which is material and that there was good cause for failure

to incorporate the evidence into the prior proceeding. *Sizemore v Sec'y of Health

and Hum. Servs.*, 865 Fed. 2d 709, 711 (6th Cir. 1988). Plaintiff contends that on

February 7, 2014 and on September 19, 2014, additional evidence was submitted

to the Appeals Council. Plaintiff claims that these records establish ongoing

treatment for his chronic pain. The treatment supports both Dr. Kerr's opinion as

8

well as plaintiff's credibility.  Plaintiff also contends that the requisite "good

cause" is present as the evidence did not exist until after the ALJ's unfavorable

decision.  It is material in that it relates to the treatment provided by Dr. Kerr, and

is consistent with his opinion.  For these reasons, plaintiff claims that the evidence

should be considered.

     C.    <u>The Commissioner's Motion for Summary Judgment</u>

          1.    Administrative proceedings

The Commissioner points out that defendant correctly notes that claimant

was awarded supplemental security income in a subsequent application, based on a

finding that he became disabled in November 2014.  However, the Commissioner

notes that plaintiff incorrectly states that "there remains a period of unadjudicated

disability" running from June 12, 2013 (the date of the ALJ's decision here)

through March 31, 2014 (the date last insured).  Plaintiff filed new applications for

supplemental security income and disability insurance benefits on November 6,

2014, again alleging disability since 2010.  The state agency adjudicated the entire

period following the June 2013 decision, and found that plaintiff retained the

capacity to perform light work throughout the later period.  The Commissioner

contends that because plaintiff was still only 54 years old when his insurance

status expired at the end of March 2014, his application for disability insurance

benefits was denied, based on Rule 202.11 of the Medical-Vocational Guidelines.

However, because plaintiff had turned 55 years old by the time he filed his application for supplemental security income, he received a fully favorable decision on this application, based on Rule 202.02, due to his entry into the advanced age category and his lack of transferrable skills.

> ## 2. The ALJ properly evaluated the opinion of treating physician, Dr. Kerr

The Commissioner also contends that the ALJ's finding that plaintiff could physically perform light work that involved only occasional fingering and reaching overhead (plus some additional non-exertional limitations) relied primarily on the opinion of state agency physician, Dr. Gupta, who reviewed plaintiff's treatment records. (Tr. 28, 75-76). Dr. Gupta concluded that plaintiff could do all of the basic activities required by light work, but had some limitations as to fine manipulation and reaching. (Tr. 75-76). The Commissioner argues that the ALJ could rely on this opinion because it was consistent with the totality of the evidence in the record, including the reports of Drs. Cherwin, Singer and Lazarra. (Tr. 283-86, 317-18, 320-22). *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514-515 (6th Cir. 2010). The Commissioner further contends that regarding plaintiff's mental limitations, the ALJ relied on the opinion of Dr. Newhouse, a state agency reviewing psychiatrist who concluded that the evidence showed, at most, mild functional limitations. (Tr. 25, 72-73).

10

The Commissioner contends that the ALJ provided sufficient reasons for discounting the opinion of plaintiff's treating physician, Dr. Kerr.  First, the ALJ noted that, while treating plaintiff for several years, Dr. Kerr did not see plaintiff more than a few times a year and did not order tests or provide much in the way of treatment for plaintiff.  (Tr. 28).  Also, the ALJ noted that the degree of limitation described by Dr. Kerr (less than sedentary work capacity, Tr. 341-343) was not consistent with the findings from a 2012 consultative examination.  (Tr. 28).  Further, while plaintiff had carpal tunnel syndrome, necessitating surgery, the surgery was successful and EMG testing in 2010 showed no sign of active carpal tunnel syndrome (Tr. 232), and an examination in 2012 showed no sign of carpal sheath tenderness (Tr. 284).  Plaintiff also notes that he suffers from Kienbock's disease, however Dr. Lazarra's findings on which the ALJ relied (Tr. 27) concluded that it was "mostly compensated."  (Tr. 287).  Also, the Commissioner notes that Dr. Singer, who conducted the 2010 hand and wrist examination, ruled out only forceful gripping.  (Tr. 323).  In sum, the Commissioner argues that none of these doctors suggested that plaintiff was unable to use his hands and arms in the limited manner that the ALJ found him able to use them.

The Commissioner further contends that no physician or psychiatrist documented any mental impairment that significantly limited plaintiff's ability to do basic mental work activities.  As such, says the Commissioner, the ALJ

11

properly relied on the opinion of Dr. Newhouse, the reviewing psychiatrist.  (Tr. 25, 72-73).  The Commissioner recognizes that Dr. Kerr concluded that plaintiff's pain would cause frequent disruption in his ability to concentrate (Tr. 341), however, Dr. Kerr did not provide any medical observations that supported this claim.  Moreover, the state examiners did not observe any sign of disrupted concentration or attention, and plaintiff did not report attention or concentration problems.  (Tr. 47, 156, 157).  Dr. Kerr also stated that plaintiff experienced significant side-effects from his medications (Tr. 284), however, plaintiff said that the only side-effects that he currently experienced was sweating.  (Tr. 55-56).

For all of these reasons, the Commissioner argues that the ALJ properly discounted plaintiff's treating physician's opinion and the RFC is supported by substantial evidence in the record.

### 3.    The ALJ did not err in evaluating plaintiff's credibility

The Commissioner argues that the ALJ had a sufficient basis for discounting plaintiff's testimony as to the severity of his symptoms.  In assessing plaintiff's credibility, the Commissioner contends that the ALJ took into account the following factors: the contemporaneous medical evidence, the lack of adequate medical evidence supporting plaintiff's most extreme claims of disability, the medical experts' assessments, plaintiff's activities of daily living, the fact that plaintiff collected unemployment benefits for a sustained period after he was

12

cleared to return to work (during part of the period he in which he now claims to

have been disabled).  (Tr. 27-28).   The Commissioner argues that the factors

considered by the ALJ were both appropriate and sufficient.  *See Jones*, 336 F.3d

at 476; *Brooks v. Soc. Sec. Admin.*, 430 Fed. Appx. 468, 482-483 (6th Cir. 2011).

> 4.    The hypothetical questions to the vocational expert accurately
>        represented plaintiff's limitations

Similar, to the argument regarding the sufficiency of the RFC, the

Commissioner contends that the ALJ did not err in not presenting a hypothetical

that included limitations as to lifting, handling, feeling and fingering.  As above,

the Commissioner says that the ALJ properly assessed the medical evidence in the

record and plaintiff's credibility when determining his work capacity.

Accordingly, the ALJ did not need to present a hypothetical that assumed any

unsubstantiated restrictions (or rely on a response to such an alternative

hypothetical).  *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th

Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th

Cir. 1993).

> 5.    Plaintiff is not entitled to a remand based on new and material
>        evidence

The Commissioner contends that the "new" evidence that plaintiff submitted

to the Appeals Council is insufficient to warrant a remand.  The Commissioner

says that except for one page dating from May 2013 (which relates to treatment for

plugged ears), plaintiff's "new" evidence relates to his condition after the ALJ's decision in June 2013.  While a court "may at any time order additional evidence to be taken before the [Commissioner]," a court may only do so "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Casey*, 987 F.2d at 1233; *see also Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).  The Commissioner argues that, at most, plaintiff has shown that the "new" evidence presented by plaintiff shows only a worsening of plaintiff's condition after the point the ALJ denied his claim, and under these circumstances a remand is not warranted under sentence six.

D.   Plaintiff's Reply

1.   The Commissioner fails to give the requisite good reasons or analysis for rejecting the treating source opinion of Dr. Kerr

Plaintiff argues that the Commissioner has not satisfied his burden in engaging in an appropriate analysis of the "good reasons" for rejecting plaintiff's treating physician Dr. Kerr's opinion that plaintiff was disabled over the opinions of state agency consulting sources.  First, the Commissioner cites Dr. Lazarra's opinion that plaintiff 's Kienbock's disease was "mostly compensated" (Tr. 287). However, plaintiff says that the alleged method of "compensation" was overuse of other muscles which places an undue strain on plaintiff's elbows and shoulders.

14

This "compensation," argues plaintiff, lends credence to plaintiff's complaints of chronic upper extremity pain and discomfort.  In fact, plaintiff points out that Dr. Lazarra seemed to agree that plaintiff's "compensation" appeared to have created a "chronic" tendinitis in his elbow and shoulders and potentially a mild degenerative arthritis.  (Tr. 287).  Also, Dr. Kerr opined that plaintiff's chronic pain would impact his capacity to sustain concentration, persistence, or pace.

Plaintiff points out that the concerns of Drs. Kerr and Lazarra are substantiated by the new and material evidence found in the records of Dr. Etha attached to plaintiff's motion.  In sum, Dr. Etha determined that as of July 29, 2014, plaintiff had shoulder pain that required occupational therapy.  Dr. Etha diagnosed plaintiff with tendonitis of the shoulder, acromioclavicular joint arthritis, and impingement syndrome of the elbow, low back pain, and sacroiliac dysfunction.  Plaintiff argues that Dr. Kerr's treating source opinion is consistent with the longitudinal medical record.  Moreover, plaintiff argues that the ALJ erred when he rejected Dr. Kerr's opinion and did not give the requisite good reasons for doing so.

## 2.   Plaintiff is entitled to a sentence six remand

Plaintiff argues that the evidence that was submitted after the administrative hearing does not merely show a worsening of his condition, but also shows an endorsement of the impairments found to exist by Drs. Kerr and Lazarra.  Plaintiff

argues that this evidence is new and material, substantiates his claim of disability, and bears consideration relative to a remand in this matter.

## III.  DISCUSSION

### A.  Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

18

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

     B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

           inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits

are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     <u>Analysis</u>

1.     Disability period

The parties disagree about whether there is an unadjudicated period of disability running from the date of ALJ Kent's decision (June 12, 2013) until the last date insured (March 31, 2014).  Following the ALJ's decision, plaintiff filed new applications for both disability insurance benefits and supplemental security income on November 6, 2014, in both applications alleging a disability beginning since 2010.  The Commissioner points out that the state agency adjudicated the entire period following the June 2013 ALJ decision, and concluded that plaintiff could perform "light" work throughout such later period.  The Commissioner indicates that because plaintiff was still only 54 years old when his insured status expired in March 2014, his application for disability benefits was denied. However, because plaintiff had turned 55 years old when he filed his applications for supplemental security income, he received a fully favorable decision on his application, due to plaintiff's entry into the advanced age category and his lack of transferrable skills.  (Dkt. 15, Def.'s Mot. Summ. J. at 3).  Based on the above, the undersigned concludes that there remains no unadjudicated period of disability benefits in this case.

2.     Treating Physician–Dr. Kerr

The undersigned agrees with plaintiff that the ALJ failed to give sufficiently

22

"good reasons" for not giving controlling, or at the least deferential weight to the opinion of Dr. Kerr, plaintiff's treating physician during the relevant time period. As both parties acknowledge, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). "Closely associated with the treating physician rule, the regulations require the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Id.* at 406 (citing § 404.1527(d)(2)). Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed to the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."

In assigning plaintiff's primary treating physician, Dr. Kerr's, opinion "little weight," the ALJ opined:

> Charles Kerr, D.O., the claimant's primary doctor of more than 30 years, opined that the claimant was limited to less than a full range of "sedentary" work (i.e. lifting no more than 10 pounds) (12E and 12F). In general, when supported by other evidence, opinions made by an individual's treating doctor are given controlling weight. Although Dr. Kerr had a long term treating relationship with the claimant, the record revealed that the claimant's actual treatment visits with Dr. Kerr were relatively

23

> infrequent. The claimant saw Dr. Kerr a few times a year
> at the most. Moreover, the course of treatment pursued
> by Dr. Kerr [has] not been consistent with what one
> would expect if the claimant were truly disabled, as the
> doctor has reported. There were no XR or MRI scans of
> the claimant's back, shoulders, or elbows in the
> evidence. There was no evidence that the claimant's
> conditions did not resolve with conservative care. There
> was no evidence that the claimant was a surgical
> candidate. This degree of limitation was not consistent
> with the physical examination results from June 2012
> (6F). For these reasons, I gave Dr. Kerr's opinion little
> weight.

(Tr. 28).  First, the undersigned finds that the ALJ did not fully consider or explain the physician-patient relationship.  In Dr. Kerr's medical source statement, he indicated that he had treated plaintiff two to three times per year for over 30 years. (Tr. 338).  This would equate to between 60 to 90 contacts between Dr. Kerr and plaintiff over their 30-year physician-patient relationship.  The undersigned believes that this 30-year, longitudinal relationship gives Dr. Kerr a wealth of background information regarding the limiting effects of plaintiff's chronic conditions.

The undersigned also finds that the ALJ did not fully consider or explain the clinical findings in the record.  As indicated above, the ALJ discounted Dr. Kerr's opinion based on the objective evidence and medical records, which the ALJ concluded "[were] not [] consistent with what one would expect if the claimant were truly disabled ..."  (Tr. 28).   First, the ALJ states that there were no imaging

24

studies conducted of plaintiff's back, shoulders or elbows in the evidence.

However, as plaintiff points out, on January 8, 2010, X-rays of plaintiff's wrists

revealed osteoarthritis secondary to Kienbock's disease. (Tr. 322). Plaintiff is

also correct when he states that he underwent a 2009 nerve conduction study

evidencing carpal tunnel syndrome in his left wrist, with a possible occult foreign

body. (Tr. 297-300). Following this report, on May 28, 2009, plaintiff elected to

undergo a carpal tunnel release procedure and the removal of the occult foreign

body. (Tr. 303). On August 18, 2009, plaintiff underwent a carpal tunnel release

on the right side. (Tr. 304). In an October 2009 follow-up appointment, plaintiff

complained of tenderness in the wrist with twisting motions. (*Id.*) Plaintiff's

surgeon, Dr. Terrence Cherwin, indicated that he was going to send plaintiff for

occupational therapy for strengthening and range of motion to the right wrist, and

would reassess his condition at a later date. (*Id.*) This evidence directly

contradicts the ALJ's conclusions that there was no evidence that the plaintiff only

required conservative care, or that plaintiff was never a surgical candidate. (Tr.

28). These conclusions, in the opinion of the undersigned, indicate that the ALJ

did not make a full and complete review of the record in this case.[2]

---

[2]  The Commissioner attempts to make a post-hoc argument to buoy up the ALJ opinion; however, many of the Commissioner's arguments were not made by the ALJ in the first instance and, in fact, directly conflict with the ALJ's conclusions. (*Compare* Dkt. 15, at 13-15 *with* Tr. 28).

Treating physician Kerr also completed a musculoskeletal residual functional capacity questionnaire, where he opined that plaintiff could continuously sit or stand for 30 minutes at a time. (Tr. 342). He concluded that plaintiff could sit or stand/walk about two hours in an eight-hour workday (with normal breaks). (*Id*.) Dr. Kerr indicated that plaintiff required 90-minutes of walking during a normal workday, for fifteen minutes periods each time. (*Id*.) Plaintiff also required a job that permitted shifting positions at will from sitting, standing or walking. (*Id*.) Dr. Kerr also opined that plaintiff needed to lie down at unpredictable intervals during a work shift approximately one to two times. (*Id*.) With prolonged sitting, Dr. Kerr concluded that plaintiff's legs should be elevated to heart level. (*Id*.) Plaintiff could only "occasionally" (e.g., less than one-third of the workday) lift or carry less than 10 pounds in a competitive work situation. (Tr. 343). Further, Dr. Kerr stated that plaintiff has significant restrictions in reaching, handling and fingering. (*Id*.) Dr. Kerr opined that plaintiff could occasionally bend or twist at the waist. (*Id*.) On average, Dr. Kerr determined that plaintiff's impairments or treatments would cause him to be absent from work more than three times per month. (*Id*.) The ALJ afforded treating physician Dr. Kerr's opinion, "little weight."

As the Sixth Circuit stated: "This requirement [to always give good reasons] is not simply a formality; it is to safeguard the claimant's procedural

rights. It is intended to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ] he is not." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted).  Moreover, if the ALJ determined that plaintiff's treating physician's opinion should not be given controlling weight despite medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009).   Another reason the ALJ gives for discounting ALJ Kerr's opinion is that it was not consistent with the physical examination results conducted by a state examiner in June 2012.  As discussed above, the undersigned concludes that the ALJ did not sufficiently assess and weigh the factors such that plaintiff's treating physician's opinion could be discounted.

Importantly, even if Dr. Kerr's opinion was not entitled to controlling weight, it was entitled to deference. 20 C.F.R. § 404.1527(d)(2)(I). As explained in SSR 96-2p,

Adjudicators must remember that a finding that a treating

27

> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion
> is not entitled to controlling weight not that the opinion
> should be rejected. Treating source medical opinions are
> still entitled to deference and must be weighed using all
> of the factors provided in 20 CFR 404.1527 and 416.927.
> In many cases, a treating source's medical opinion will
> be entitled to the greatest weight and should be adopted,
> even if it does not meet the test for controlling weight.

*18.

The undersigned finds that the ALJ did not adequately address why Dr.

Kerr's opinion should not be given controlling weight or even deference, as

required by the regulations. 20 C.F.R. § 404.1527(d)(2). Although the ALJ's

finding that plaintiff was not disabled ultimately may be justified, if an ALJ fails

to adequately explain why he rejected or discounted the opinion and how those

reasons affected the weight accorded the opinion, the Court must find that

substantial evidence is lacking, "even where the conclusion of the ALJ may be

justified based upon the record." *Rogers*, 486 F.3d at 243 (citation omitted).

### 3. Sentence Six Remand

Plaintiff also argues that the Appeals Council failed to consider evidence

that it submitted after the administrative hearing on May 14, 2013, that he argues

supports his claim of disability.  Under sentence six of 42 U.S.C. § 405(g),

plaintiff has the burden to demonstrate that this evidence is "new" and "material"

and that there is a "good cause" for failing to present this evidence in the prior proceeding. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements."  *Hollon*, 447 F.3d at 486. "Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a "harder line" on the good cause test. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 Fed. Appx. 593, 598-99 (6th Cir. 2001). A plaintiff attempting to introduce new evidence must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *see also Brace v. Comm'r of Soc. Sec.*, 97 Fed. Appx. 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing with the ALJ did not establish good cause); *Cranfield v. Comm'r of Soc. Sec.*, 79 Fed. Appx. 852, 859 (6th Cir. 2003). Additionally, in order to establish materiality, plaintiff must show that the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Hensley v. Comm'r of Soc. Sec.*, 214 Fed. Appx. 547, 550 (6th Cir. 2007).

Even if plaintiff could establish "good cause," he has failed to establish that the records are "material," and thus has failed to meet his burden for a sentence six remand. To establish "materiality," plaintiff must explain how the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. The additional records do not contain any opinions on plaintiff's functional ability through the last date insured and, even if they did, such retrospective opinions would not support plaintiff's disability through the last date insured of March 31, 2014. *See e.g., Wladysiak v. Comm'r of Soc. Sec.*, 2013 WL 2480665, at *11 (E.D. Mich. 2013), *citing Lancaster v. Astrue*, 2009 WL 1851407, at *11 (M.D. Tenn. 2009) ("[A] retrospective diagnosis relating back to the insured period may be considered proof of disability only if it is corroborated by evidence contemporaneous with the eligible period."). Importantly, plaintiff acknowledges that the new records establish "ongoing" treatment for his chronic pain, and that he is using them to support his treating physician's opinion and his own credibility. (Dkt. 14, Pl.'s Mot. Summ. J. at 15). Notably, the Appeals Council considered these records in evaluating plaintiff's disability claims and found that the Administrative Law Judge decided plaintiff's case through June 12, 2013. The Appeals Council concluded: "This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before June

30

12, 2013."  (Tr. 2).  For these reasons, the undersigned concludes that plaintiff has failed to meet his burden to demonstrate that the evidence is "material." Accordingly, a sentence six remand is not appropriate.

As to plaintiff's remaining complaints of error, those can be addressed by the ALJ on remand, given that a reassessment of plaintiff's credibility, impact of his pain complaints, and the RFC will likely be necessary after addressing the foregoing issues.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment (Dkt. 14) be **GRANTED**, that defendant's motion for summary judgment (Dkt. 15) be **DENIED**, and that the findings of the Commissioner be **REVERSED AND REMANDED,** so that the ALJ can accord proper weight to the opinion of the treating physician and give the required "good reasons" in the notice of determination for the weight given.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that

raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 11, 2015         s/Michael Hluchaniuk
                                     Michael Hluchaniuk
                                     United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>September 11, 2015</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left: 40%;">
s/Tammy Hallwood<br>
Case Manager<br>
(810) 341-7887<br>
tammy_hallwood@mied.uscourts.gov
</div>