UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT EHMCKE,

    Plaintiff,                                Civil Action No. 14-CV-14301

vs.                                                  HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND,
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND
REMANDING FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on plaintiff's motion for remand [docket entry 14] and defendant's motion for summary judgment [docket entry 15]. Magistrate Judge Michael Hluchaniuk has submitted a Report and Recommendation ("R&R") in which he recommends that plaintiff's motion be granted (under sentence four, but not sentence six, of 42 U.S.C. § 405(g)) and that defendant's motion be denied. Neither party has filed objections to the magistrate judge's R&R and the time to do so has expired.

Plaintiff has brought this action under § 405(g) to challenge defendant's final decision denying his application for Social Security disability insurance benefits. An Administrative Law Judge ("ALJ") held a hearing in May 2013 and issued a decision denying benefits the next month (Tr. 21-30). This became defendant's final decision in September 2014 when the Appeals Council denied plaintiff's request for review (Tr. 1-4).

Under § 405(g), the issue is whether the ALJ's decision is supported by substantial evidence, which is defined as "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938). In making this determination the Court does not review the record de novo, and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence would have supported a contrary decision and even if the Court may have decided the case differently in the first instance. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014).

At the time of his ALJ hearing, plaintiff was 53 years old. He has a tenth grade education and work experience as a truck driver and warehouse manager. Plaintiff claims he has been disabled since January 2010 due to neuropathy, vitiligo, Kienbock's Disease, carpal tunnel syndrome in both hands, depression, high blood pressure, and possible diabetes (Tr. 125, 143). Plaintiff testified that he could stand for up to two hours and ten minutes before having to sit, that he could sit for the same length of time before having to stand, and that he could walk for three blocks (Tr. 43-44). Plaintiff stated he has pain in both hands, drops things from time to time, and is limited in his ability to turn and twist (Tr. 45, 57).

The medical evidence has been summarized by the ALJ (Tr. 24-28) and by the magistrate judge and it need not be set forth in detail here. In short, the records indicate that plaintiff has been diagnosed with hypertension, Kienbock's Disease, lumbar neuropathy (Tr. 225), depression (Tr. 232, 292), and osteoarthritis in his wrist (Tr. 322). He has undergone surgery for carpal tunnel syndrome on both wrists (Tr. 226 [right], Tr. 233 [left]).

The ALJ found that plaintiff's severe impairments are "osteoarthritis of the bilateral wrists secondary to Kienbock's Disease (a.k.a. vascular necrosis of the lunate) status post bilateral carpal tunnel releases" (Tr. 24). The ALJ found that plaintiff cannot perform his past work, but that

he has the residual functional capacity ("RFC") to do a limited range of light work. A vocational expert ("VE") testified to the existence of thousands of security guard and food preparer positions that come within the parameters of the ALJ's hypothetical question (Tr. 66).[1] The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could perform to support his conclusion that plaintiff is not disabled (Tr. 30).

Having reviewed the administrative record, the parties' briefs, and the R&R, the Court finds that the matter must be remanded for further proceedings because, as the magistrate judge correctly concluded, the ALJ failed to properly evaluate the opinion of plaintiff's treating physician, Dr. Kerr. Dr. Kerr, who has seen plaintiff two to three times annually for the past 30 years (Tr. 340), indicated that plaintiff must be permitted to sit, stand, or walk at will; that he must lie down once or twice per day at unpredictable times; that he must keep his legs elevated at heart level while he sits; that he can lift less than ten pounds occasionally but never ten pounds or more; that he cannot use his arms for reaching or for overhead reaching; that he can use his fingers for fine manipulation ten percent of the time during a workday; that he can use his hands five percent of the time to grasp, turn, or twist objects; that he can bend and twist at the waist only occasionally; and that his impairments or treatment would cause him to be absent from work more than three times per month (Tr. 342-43). The ALJ gave Dr. Kerr's opinion "little weight," and included none of Dr. Kerr's restrictions in his hypothetical question to the VE, for the following reasons:

---

[1] The hypothetical question described a worker of plaintiff's age, education, and work experience, with an ability to lift ten pounds frequently and twenty pounds occasionally, who can stand and walk for six hours and sit for six hours during an eight-hour day, and who "has a limitation of overhead reaching bilateral to occasional; handling objects bilateral to frequent[;] [f]ingering, defined as fine manipulation, is occasional; feeling bilateral is frequent" (Tr. 61, 66).

> Although Dr. Kerr had a long term treating relationship with the claimant, the record revealed that the claimant's actual treatment visits with Dr. Kerr were relatively infrequent. The claimant saw Dr. Kerr a few times a year at the most. Moreover, the course of treatment pursued by Dr. Kerr was not been [sic] consistent with what one would expect if the claimant were truly disabled, as the doctor has reported. There were no XR or MRI scans of the claimant's back, shoulders, or elbows in the evidence. There was no evidence that the claimant's conditions did not resolve with conservative care. There was no evidence that the claimant was a surgical candidate. This degree of limitation was not consistent with the physical examination results from June 2012 (6F).

(Tr. 28.)

As the magistrate judge noted, the ALJ is required by regulation and case law to

> give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion. *Id*.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Further,

> the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." *Id*. A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations

> where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Id.* at 544-45.

In the present case, the ALJ did not give "good reasons" for according Dr. Kerr's opinion "little weight." The ALJ's statement that Dr. Kerr saw plaintiff infrequently is inaccurate, as the ALJ acknowledged that Dr. Kerr saw plaintiff "a few times a year" over a 30-year period. As the magistrate judge noted, "this 30-year, longitudinal relationship gives Dr. Kerr a wealth of background information regarding the limiting effects of plaintiff's chronic conditions." R&R at 24.

The ALJ also erred in suggesting Dr. Kerr's opinion is entitled to little weight due to the lack of objective findings. The objective findings, particularly regarding plaintiff's carpal tunnel syndrome and two surgeries, osteoarthritis in his wrists, reduced strength and range of motion in his wrists and fingers, are noted in detail in the R&R and directly contradict the ALJ's statement that plaintiff's impairments have "resolve[d] with conservative care" or that plaintiff has never been a candidate for surgery.

Nor may Dr. Kerr's restrictions be disregarded on the grounds that "[t]his degree of limitation was not consistent with the physical examination results from June 2012 (6F)." Exhibit 6F is the report of Dr. Lazzara, who examined plaintiff at defendant's request. A number of Dr. Lazzara's comments and findings are consistent with the restrictions imposed by Dr. Kerr: "He now takes Vicodin for pain and Oxycodone TID [three times per day] as well as medical marijuana"; [h]e

does use bilateral wrist and elbow braces. He has complained of progressive pain in the shoulders and elbows due to compensation for his hands"; [g]rip strength is diminished bilaterally[;] [d]exterity is mildly impaired bilaterally" (Tr. 283-84). Additionally, Dr. Lazzara found that plaintiff is limited to carrying and pushing less than ten pounds and pulling less than five pounds (Tr. 281). At a minimum, the ALJ failed to explain how Exhibit 6F undercuts Dr. Kerr's opinion.

On remand, the ALJ must reevaluate Dr. Kerr's opinions as required by *Wilson*, *supra*, 20 C.F.R. § 404.1527(d)(2), and Social Security Ruling 96–2p. The ALJ must then, as appropriate, revise his RFC assessment of plaintiff and incorporate the revised RFC assessment in hypothetical questions to the VE.

The Court also finds that the ALJ failed to develop the record as to the side effects of plaintiff's medications. Among other medications, plaintiff has been prescribed Oxycodone and Hydrocodone for pain and Cymbalta for his depression (Tr. 169, 196, 377).[2] Dr. Kerr indicated that "Oxycontin will cause lightheadedness, dizziness, delayed [reaction] time" (Tr. 341), and plaintiff wrote in his Function Report that his pain medications make him sleepy (Tr. 169).[3] At the hearing plaintiff indicated "the Oxycontin can make you drowsy" (Tr. 56).

Although the ALJ asked two perfunctory questions about medication side effects (Tr.

---

[2] The record also indicates plaintiff has been prescribed Zolpidem, Metoprolol, Simvastatin, and Toprol-XL (Tr. 169, 196, 376-77), common side effects of which include dizziness, lightheadedness, confusion, sleepiness and drowsiness. *See* http://www.drugs.com/sfx/[drug name]-side-effects.html

[3] Plaintiff's sister, Ruth Kilmer, likewise reported that plaintiff's pain medications make him sleepy (Tr. 158). The ALJ found that Ms. Kilmer's observations of plaintiff were entitled to "significant weight" because she "visited the claimant a few times a week" and "was in a good position to observe his activities firsthand" (Tr. 28). On remand, the ALJ must consider Ms. Kilmer's observations in assessing the side effects plaintiff experiences from his medications.

55-56), he made no findings as to their nature and extent and made no mention of them in his hypothetical question to the VE. In his written decision, the ALJ noted in passing that plaintiff has been prescribed pain medications and anti-depressants (Tr. 27), but he made no mention of medication side effects whatsoever.

The ALJ entirely neglected to develop the record as to this medically and vocationally significant issue.[4] Clearly, if plaintiff is experiencing any of the common side effects of any of his many medications – including sleepiness, to which he specifically testified, or lightheadedness, dizziness, or delayed reaction time, which Dr. Kerr specifically mentioned – his ability to work could be significantly affected if not ruled out altogether. And, of course, a VE's testimony cannot be used to prove the existence of work plaintiff can perform unless the testimony is given in response to a hypothetical question that "accurately portrays the claimant's physical and mental impairments." *Turner v. Comm'r of Soc. Sec.,* 381 F. App'x 488, 493 (6th Cir. 2010). The Sixth Circuit has held that hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must (1) determine which medications plaintiff was prescribed during the relevant time period, (2) make findings as to the nature and extent of these medications' side effects and adjust his findings as appropriate regarding plaintiff's RFC, and (3) incorporate these findings in proper hypothetical questions to the VE to determine whether work exists in significant numbers that can be performed by a person such as plaintiff experiencing such side effects.

---

[4] The ALJ is required to evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which symptoms impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)).

On remand, the ALJ must also make findings regarding plaintiff's alleged need to lie down and, if the need is established, incorporate such findings in the RFC assessment and in proper hypothetical questions to the VE. Plaintiff testified to his need to do so (Tr. 56-59), and Dr. Kerr specifically noted plaintiff's need to do so once or twice daily at unpredictable times (Tr. 342). The ALJ found that plaintiff's "post herpetic neuralgia (neuropathy) and/or shingles" are non-severe impairments (Tr. 25), but he did not address the testimony and evidence concerning plaintiff's need to lie down as a result of this impairment. Again, the vocational significance of this alleged need is obvious and it must be addressed on remand. Accordingly,

IT IS ORDERED that Magistrate Judge Hluchaniuk's R&R is hereby accepted and adopted as the findings and conclusions of the Court.

IT IS FURTHER ORDERED that plaintiff's motion for remand (under sentence four of § 405(g)) is granted so that the errors in the record, identified above and in the magistrate judge's R&R, may be corrected.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied.

    _s/ Bernard A. Friedman_____
    BERNARD A. FRIEDMAN
    SENIOR UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2015
    Detroit, Michigan